IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Roosevelt John Louice Burgess, III, | Case No. 3:12 CV 3049 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Richard Wantz, et al., | |
| Defendants. | |

## INTRODUCTION

*Pro se* Plaintiff Roosevelt John Louice Burgess, III, filed this action against Kessler Corporation President Richard Wantz, Kessler Vice President Mary Beaver, and Toyota Motor Corporation of Japan President Akio Toyoda (Doc. 1).[1] Plaintiff alleges Defendants used his invention idea to manufacture and sell a similar product. He seeks monetary damages and injunctive relief.

## BACKGROUND

The Kessler Corporation ("Kessler") assists inventors with marketing their inventions to potential manufacturers. For a fee of $1,125, Kessler will prepare a letter describing the invention and compile a list of manufacturers who potentially would be interested in purchasing the rights to the product. Kessler will also handle all correspondence with manufacturers, answer their questions, and supply information. If the manufacturer expresses an interest in purchasing the invention, Kessler will act as a consultant or advisor to the client for an additional fee. Kessler's promotional

---

[1] Plaintiff names Wantz, Beaver and Toyoda in their individual capacities, as well as their "corporate capacit[ies]" (Doc. 1 at 8). This Court will construe the corporate capacity claims as against the corporations themselves.

materials clearly state the company does not apply for patents, conduct negotiations with manufacturers, or draft contracts for clients.

Plaintiff is a federal prisoner presently incarcerated in the United States Penitentiary in Jonesville, Virginia. He sent a letter to Kessler from prison in 2007 discussing his idea for a built-in child safety seat for a motor vehicle. Kessler responded with a form letter addressed, "Dear Inventor," which contained basic information about the company. The letter invited Plaintiff to call with questions. Plaintiff sent a second letter on April 23, 2008, with additional information about the built-in child safety seat. He indicated the child safety seat can be retrieved from the back rest of the back seat of a motor vehicle with the push of a button or a tug on the handle (Doc. 1-1 at 16). The child safety seat would then fold back up into the back rest of the seat when not in use (*id.*). Plaintiff did not ask Kessler to represent him in this letter, and did not enclose the required fee to obtain their services.

Plaintiff received another form letter from Kessler on July 31, 2008. This letter again described the services Kessler could offer to Plaintiff and suggested he pay the fee to engage them. Plaintiff replied to Kessler in a letter dated August 9, 2008, indicating he did not believe he should be required to pay the fee. Instead, he offered them a percentage of his profit should a manufacturer purchase his invention. Kessler did not accept this counterproposal. Plaintiff sent another letter on August 13, 2008, informing Kessler he had engaged another firm to help him with the patent process (*id.* at 27).

On August 31, 2008, Plaintiff wrote to Kessler and accused them of selling his idea to Toyota without his knowledge (*id.* at 32–34). He demanded Kessler settle things amicably by forwarding a check to him for 95 percent of the sales price (*id.* at 33–34). He sent similar letters to

2

Kessler in September 2008 and February 2009, accusing the company of fraud and demanding compensation (*id.* at 32–39; Doc. 1-2 at 1). Kessler did not respond to these letters. Plaintiff indicates he tried to telephone Kessler's offices in Ohio and Arizona but the receptionist refused his calls and hung up on him.

In June 2010, Plaintiff signed and returned the employment agreement Kessler sent to him two years earlier, and demanded Kessler immediately prepare a description of his invention and market it to manufacturers (Doc. 1-2 at 11, 17). On September 5, 2010, he wrote to Kessler claiming his calls were being refused (*id.* at 21). He indicated he sent the contract and a check for partial payment of the fee to the Arizona office but had not heard from the company (*id.*). Kessler responded in writing on October 19, 2010, telling Plaintiff the company was in possession of an agreement signed by him but did not receive payment of any sort and could not process the agreement without payment (*id.* at 24). Plaintiff wrote back to Kessler on December 30, 2010 and offered, in lieu of the fee, to allow Kessler to keep 35 percent of the first payment tendered by a manufacturer. He indicated he previously sent a partial payment to the Ohio office and suggested the counteroffer waiving the fee would be a means of settling their disagreement amicably. Kessler did not respond or accept the counteroffer.

Undeterred by Kessler's lack of response, Plaintiff continued to send letters and call Kessler's offices demanding payment for his invention. Plaintiff sent a letter to Kessler on January 17, 2011 stating it had been four years since Kessler solicited his business and indicating the company had done nothing to help him market his invention (Doc. 1-3 at 4–7). He asked Kessler to sign the contract and pay him his share of the proceeds for the sale of his invention (*id.* at 7). Plaintiff sent a letter to Kessler on January 26, 2011 demanding payment of at least half of the

proceeds from the sale of his invention (*id.* at 8–10). Plaintiff indicated Kessler had blocked all calls from the prison.

In March 2011, Plaintiff began writing to Toyota claiming Toyota purchased his invention from Kessler and neither Toyota nor Kessler had paid him (Doc. 1-4 at 2–8). He wrote additional letters to Toyota in May and June 2012 demanding payment (*id.* at 29–31). Toyota's attorneys told Plaintiff Toyota did not have a licensing agreement with Kessler (*id.* at 29). Plaintiff sent another letter to Toyota's attorneys claiming Toyota infringed a patent, and offering to settle the matter for $50 million and 12 percent royalties for seventeen years (*id.* at 32–36). Toyota, through counsel, denied it had infringed a patent belonging to Plaintiff, denied any association with Kessler, and informed Plaintiff it would not respond to any other communications from him (*id.* at 37).

While writing to Toyota, Plaintiff continued his letter-writing campaign to Kessler. Plaintiff sent yet another letter to Kessler in June 2011, inquiring into the status of the financial arrangements they had made, and offering 35 percent of the first payment tendered by a manufacturer in lieu of payment of Kessler's fee (Doc. 1-3 at 18–21). He indicated he attempted to make a partial payment of Kessler's fee, but the money had been returned to his prisoner account (*id.* at 19). He demanded payment from Kessler in February 2012 (Doc. 1-4 at 1), and in April 2012, he threatened to sue if Kessler did not pay him $30 million (Doc. 1-5 at 1–7).

Plaintiff then filed this lawsuit, asserting six distinct causes of action.[2] First, he asserts a claim against Wantz for breach of contract. Second, he asserts Wantz engaged in improper and deceptive invention promotion practices in violation of 35 U.S.C. § 297. Third, Plaintiff asserts a

---

[2] Plaintiff lists approximately sixteen causes of action. Most of these are redundant and can be combined to form six distinct causes of action.

claim of patent infringement in violation of 35 U.S.C. § 271. Fourth, Plaintiff contends Defendants defrauded the government in violation of 18 U.S.C. § 1001. Fifth, he asserts Defendants engaged in mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Finally, Plaintiff asserts Defendants violated the Sherman Antitrust Act, 15 U.S.C. §§ 1–7, which provides criminal penalties for creation of a monopoly. He seeks monetary damages of no less than $30 million for the rights to the patent, three times the profits accrued from the invention or $50 million, whichever is greater, injunctive relief, assignment of the patent, attorney fees for the last five years, and litigation costs.

## STANDARD FOR DISMISSAL

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997). An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest that clearly does not exist. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the

allegations in the complaint are true. *Twombly*, 550 U.S. at 555. Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, this Court must construe the pleading in the light most favorable to plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## ANALYSIS

Plaintiff first alleges breach of contract. Under Ohio law, to establish a breach of contract, Plaintiff must show: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. *MMK Group, LLC v. SheShells Co.*, 591 F. Supp. 2d 944, 963 (N.D. Ohio 2008). To prove the existence of a valid contract, Plaintiff must prove all the essential elements of a contract, including an offer, acceptance, the manifestation of mutual assent, and consideration (the bargained for legal benefit and/or detriment). *Kostelnik v. Helper*, 96 Ohio St. 3d 1, 3 (2002). He must also show there was a meeting of the minds and the contract was definite in its essential terms. *Episcopal Ret. Homes, Inc. v. Ohio Dep't of Indus. Relations*, 61 Ohio St. 3d 366, 369 (1991).

Applying these principles to the facts alleged by Plaintiff, there is no indication Plaintiff had a valid contract with Kessler. He has not shown a manifestation of mutual assent or consideration. He received form letters from Kessler, addressed "Dear Inventor," generally discussing the types of services the company performs and the fees they charge. Even if this could be construed as an offer, Plaintiff did not accept the offer and instead attempted to negotiate the manner in which the fees would be paid. Kessler did not accept Plaintiff's counteroffers. Plaintiff alleges he eventually signed the agreement and sent Kessler a partial payment of the fee, but Kessler returned the fee and

declined to do business with him. The parties did not manifest a mutual assent to enter into a contract, nor did they exchange consideration.

Plaintiff also claims Kessler engaged in improper and deceptive invention promotion practices in violation of 35 U.S.C. § 297. Section 297(a) requires invention promoters to make certain disclosures about the success of their promotion activities. Section 297(b) provides a civil cause of action to:

> any customer who enters into a contract with an invention promoter and who is found by a court to have been injured by any material false or fraudulent statement or representation, or any omission of material fact, by that invention promoter . . . or by the failure of that invention promoter to disclose such information as required under [the statute].

However, as discussed above, Plaintiff did not enter into a contract with Kessler. Without a contract, Plaintiff cannot bring a civil action under Section 297 for alleged injury due to failure to disclose information.

Just as Plaintiff cannot bring a cause of action for breach of contract if he does not have a contract with Kessler, Plaintiff cannot bring a claim for patent infringement under 35 U.S.C. § 271 unless he actually owns a patent. To state a claim for patent infringement, Plaintiff need only plead facts sufficient to place Defendants on notice of the asserted claim and to ensure Defendants have adequate knowledge of the facts alleged in order to reasonably form a response. *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000). A complaint for patent infringement satisfies the above requirements, as well as the limited criteria of Federal Civil Rule 8(a), when a plaintiff: (1) alleges ownership of the asserted patent; (2) names each individual defendant; (3) cites the patent allegedly infringed; (4) describes the manner in which defendants allegedly infringed the patent; and (5) identifies the specific sections of patent law invoked. *See id.* (internal quotations and citations omitted). The United States Patent and Trademark Office has no

record of a patent or patent application submitted by Plaintiff.[3] In fact, Plaintiff claims Defendants interfered with his ability to obtain a patent (Doc. 1-1 at 39, Doc. 1-2 at 4, Doc. 1-3 at 3, 6, 36). Because Plaintiff does not own a patent, he lacks an essential element of a patent infringement claim.

Moreover, even if Plaintiff owned a patent, he has failed to identify the patent by number and specifically allege the manner in which he believes Defendants' products infringed it. A patent application contains an abstract, drawings, a description and one or more claims. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). The claims are summaries of one or more novel or unique points of the invention which define the scope of protection of the patent. In order to succeed on a cause of action for patent infringement under Section 271, Plaintiff must prove the accused product contains elements identical or equivalent to each claim contained in the patent of his invention. *Id.* If a single element is missing from the accused product, there is no infringement. *Id.*; *see also Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

Because a comparison of the claims in Plaintiff's claimed patent and the elements of Defendants' products are integral to determining whether infringement occurred, Plaintiff cannot merely state in vague, general terms that his invention and Defendants' products are similar in an unspecified way. Indeed, there are other patents for vehicle seats with built-in or integrated child safety seats, and at least four of these were patented well before Plaintiff alleges he contacted Kessler with his idea for an invention.[4] Without identifying a valid patent and describing how

---

[3] Patents and patent applications submitted to the United States Patent and Trademark Office can be searched at: http://www.uspto.gov.

[4] *See, e.g.*, Patent number US 5161855 A (vehicle seat with built-in child seat that folds into the main seat back of the vehicle, filed Jan. 11, 1991 by inventor Michael L. Harmon); Patent number US 4555135 A (built-in child safety seat for vehicles that folds into the passenger seats, filed Feb. 28, 1984 by inventor Verne L. Freeland); Patent number US 5730493 A (built-in baby seat for transport in vehicles, which is
(continued...)

8

Defendants' products contains elements identical or equivalent to each claim in his asserted patent, Plaintiff has not stated a claim for patent infringement under Section 271. Plaintiff has requested damages under 35 U.S.C. § 284, injunctive relief under 35 U.S.C. § 283 (Doc. 6), and attorneys' fees under 35 U.S.C. § 285 as remedies for his patent infringement claim. Because this Court finds that Plaintiff has not stated a claim for patent infringement under 35 U.S.C. § 271, all of these remedies are denied.

Plaintiff lacks standing to assert his Fourth, Fifth, and Sixth causes of action. He bases these claims on alleged violations of 18 U.S.C. §§ 1001, 1341 and 1343, and 15 U.S.C. §§ 1–7. Each of these claims is based on violation of a criminal statute. Criminal statutes do not provide a private right of action for damages, unless Congress specifically grants such an action to an injured party. *See Taylor v. Brighton Corp.*, 616 F.2d 256 (6th Cir. 1980). Plaintiff cannot maintain a civil action under these statutes.

On December 14, 2012, Plaintiff filed a Motion for Appointment of Counsel (Doc. 3). He argues that he is indigent and unable to secure funds to hire private counsel. He also argues that the complexity of the issues involved in this matter, combined with his lack of legal training, will greatly limit his ability to proceed *pro se*. Appointment of counsel in a civil case is not a constitutional right. *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993). It is a privilege justified only by exceptional circumstances. *Id.* In determining whether exceptional circumstances exist, courts consider the plaintiff's ability to represent himself, the chances of success of plaintiff's

---

[4](...continued)
contained within the seat back of the vehicle, filed July 2, 1996 by inventors Alexandre Antonio Fornasari, Jr. and Dante Luiz Nascimento); Patent number EP 1273475 B1 (child's car seat, integral with the rear seat of motor vehicles, filed June 24, 2002 by inventor Andrea Luppino); Patent number WO 2009061250 A1 (integrated child safety seat in motor vehicle in which safety seat comprises the back rest, filed Nov. 6, 2008 by inventor Christer Loenn); Patent number US 7871124 B1 (built-in baby seat integrated into vehicle seat back, filed May 1, 2009 by inventor Shakir Hinds); Patent number WO 2013024959 A1 (vehicle seat having built-in baby seat, filed May 15, 2012 by inventor Jung Jin Lee).

9

claims, and the complexity of the issues. *Id.* at 606. Here, it is not necessary to consider those factors because this Court is dismissing this action. Therefore, Plaintiff's Motion for Appointment of Counsel is denied as moot.

Finally, on December 14, 2012, Plaintiff filed a Motion for Service of Subpoena Duces Tecum, requesting that Defendants be required to produce information related to Plaintiff's claims (Doc. 5). Because this Court is dismissing this action, Plaintiff's Motion for Service of Subpoena Duces Tecum is denied as moot.

## CONCLUSION

Accordingly, Plaintiff's Motions for Appointment of Counsel (Doc. 3) and Service of Subpoena Duces Tecum (Doc. 5) are denied as moot, and this action is dismissed under 28 U.S.C. § 1915(e). This Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

June 26, 2013